Filing # 154629413 E-Filed 08/03/2022 04:09:30 PM

## IN THE CIRCUIT COURT OF THE SECOND JUDICIAL CIRCUIT
## IN AND FOR LEON COUNTY, FLORIDA

Bennett Fields,

       Plaintiff,

v.

International Vapor Group, Inc., International Vapor Group, LLC, Turning Point Brands, LLC, Vapor Supply, LLC, Vapor Beast, LLC, Vapor Stockroom, LLC.,

       Defendants.

Case no. _____

**COMPLAINT**
(Jury trial demanded)

Plaintiff alleges as follows:

### Parties and jurisdiction

1.    At all material times, Bennett Fields was a citizen and resident of Leon County, Florida.

2.    Defendant International Vapor Group, Inc. is a Florida corporation with its principal place of business at 14300 Commerce Way, Miami Lakes, FL 33016.

3.    Defendant International Vapor Group, LLC is a Florida limited liability company with its principal place of business at 5201 Interchange Way, Louisville, KY 40229.

4.    Defendant Turning Point Brands, LLC is a Kentucky limited liability company with its principal place of business at 5201 Interchange Way, Louisville, Kentucky 40229.

5.    Defendant Vapor Supply, LLC is an Oklahoma limited liability company with its principal place of business at 100 North Broadway, Suite 2900, Oklahoma City, Oklahoma 73102.

6.    Defendant Vapor Beast, LLC is a California limited liability company with its principal place of business at 5201 Interchange Way, Louisville, Kentucky 40229.

7.     Defendant Vapor Stockroom, LLC is a Kentucky limited liability company with its principal place of business at 2428 Palumbo Drive, Suite 110, Lexington Kentucky 40509.

8.     This Court has jurisdiction over the parties and the subject matter of this action.

9.     Venue is proper in this Court as the cause of action accrued in Leon County, Florida.

**Factual allegations**

10.    Defendants International Vapor Group, Inc., International Vapor Group, LLC, Turning Point Brands, LLC, Vapor Supply, Inc., Vapor Beast, LLC and Vapor Stockroom, LLC are in the business of marketing, distributing and selling, amongst other things, e-cigarettes, personal vaporizers, e-liquids, and other "vaping" accessories, including 18650 lithium ion batteries, through their retail operations.

11.    Defendants market, distribute, and sell 18650 cylindrical lithium-ion rechargeable batteries to vape stores, tobacco stores, and other retail operations throughout the state of Florida.

12.    Defendants distribute other products to the state of Florida.

13.    Defendants market other products to the state of Florida.

14.    Defendants sell other vaping products to stores in the state of Florida.

15.    Defendants have purposefully availed themselves of the privilege of conducting business in the state of Florida by virtue of their sales, distribution, and shipping of products, including cylindrical 18650 cells, into the state of Florida.

16.    Specifically, the Defendants at various times marketed, distributed, sold, and shipped 18650 (and other vaping products) to South Georgia Vape, a vaping retailer with its principal place of business in Tallahassee, Florida.

17. Specifically, the Defendants marketed, distributed, sold, and shipped Samsung 18650 batteries to South Georgia Vape – despite the fact that the Defendants were not authorized by Samsung to sell or distribute Samsung products.

18. Prior to October 24, 2018, Mr. Fields purchased Samsung rechargeable lithium-ion 18650 batteries from South Georgia Vape at its Tallahassee store.

19. Defendants supplied the Samsung batteries that Mr. Fields purchased from South Georgia Vape.

20. At the time of purchase, South Georgia Vape marketed or represented to plaintiff that the batteries he was purchasing were authentic "Samsung" batteries.

21. The subject batteries sold to Mr. Fields had no warnings, instructions for use, or other written directions.

22. South Georgia Vape sold the subject batteries to Mr. Fields specifically for use with an e-cigarette and with the understanding that Mr. Fields intended to use them to power an e-cigarette.

23. Similarly, the Defendants marketed, distributed, and sold Samsung batteries to South Georgia Vape with the understanding and intent that South Georgia Vape would sell them to customers like Mr. Fields for the specific purpose of use with vaping devices.

24. At the time of sale, South Georgia Vape marketed and sold the subject batteries as suitable and intended for use with e-cigarettes.

25. On or around October 24, 2018, Mr. Fields was walking from his home to meet a friend at a nearby restaurant.

26. Mr. Fields had his box mod in his left front pants pocket with two charged Samsung batteries inside the mod.

27. Mr. Fields had the subject batteries inserted correctly into the mod and was using the device in a reasonably foreseeable manner.

28. As Mr. Fields neared the end of his driveway, one or both of the subject batteries exploded and burst into flames.

29. The explosion blew the back of the box mod off and both batteries were ejected.

30. As a result, of the flames venting from the subject batteries, Mr. Fields' pants caught on fire.

31. As a result, Mr. Fields suffered significant burn injuries from his waist down.

32. At all times, Mr. Fields was using his e-cigarette and the subject batteries in a foreseeable manner and for the specific purpose for which they were sold.

33. Mr. Fields required emergency medical care.

34. Mr. Fields received, and continues to receive, medically necessary treatment for which he incurred reasonable and necessary medical expenses.

35. As a direct and proximate result of the explosion, Mr. Fields suffered physical injury, physical deformity, conscious pain and suffering, mental anguish, emotional distress, and economic loss.

## Causes of action

**One:** Strict products liability as to all defendants

36. Plaintiff incorporates all prior paragraphs.

37. At all times, Defendants were distributors and sellers of the Samsung 18650 batteries at issue in this matter.

38. Defendants distributed and sold Samsung 18650 batteries to South Georgia Vape.

39. The subject batteries were used by Mr. Fields without alteration or modification.

40. At the time of the subject explosion, the subject batteries were substantially similar in condition as on the day they delivered by the Defendants and were purchased by Mr. Fields.

41. At the time Mr. Fields purchased the subject batteries, they were unreasonably dangerous for their intended and foreseeable use.

42. At the time of the explosion, the subject batteries failed to perform as safely as reasonably expected by Mr. Fields when he purchased them.

43. The subject batteries were unreasonably dangerous in a number of ways including, but not limited to, the following:

   a. They failed to perform as safely as reasonably expected by Mr. Fields;

   b. They failed to incorporate available safety devices that would have prevented the batteries from exploding;

   c. They failed to incorporate available safety devices to interrupt the circuit once it detected a short circuit;

   d. They were not designed for or intended to be used in e-cigarettes or in any application that did not have a dedicated battery management system;

   e. They were not designed for or intended to be used or charged individually;

   f. They contained manufacturing defects that made it susceptible to failure;

   g. They were supplied to Mr. Fields without adequate instructions or warnings rendering them unreasonably dangerous for the use to which Mr. Fields put them; and

   h. Any other conditions unearthed in discovery that rendered the subject batteries unreasonably dangerous.

44. At the time the Defendants distributed and sold the subject batteries, they knew that 18650 lithium-ion batteries could explode.

45. At the time the Defendants sold the subject batteries, they were aware of other incidents where persons using substantially similar batteries for vaping had experienced battery explosions.

46. The Defendants never provided any warnings to its customers about that hazard.

47. At the time Defendants shipped the subject batteries, they were aware of other incidents where persons using its 18650 batteries for e-cigarettes or "vaping" had experienced battery explosions.

48. At the time Defendants shipped the subject batteries, they were aware of other incidents where persons carrying its 18650 batteries in a pocket had experienced battery explosions.

49. At no time have Defendants ever included a warning on an 18650 battery about a risk of explosion or fire.

50. At all relevant times Mr. Fields used the products as he believed they were intended to be used.

51. During the subject event, the subject batteries and box mod catastrophically failed causing serious injury to Mr. Fields.

52. That malfunction and failure occurred from a defect in either the assemblage, formulation, or the manufacture of the subject batteries or because they were sold for an unsafe and unintended use.

53. The unreasonable danger posed by the subject batteries was hidden from and unknown to Mr. Fields.

54. As a direct and proximate result of the unreasonably dangerous condition of the subject products, the devices exploded and caused serious injury to Mr. Fields.

55. Defendants are strictly liable to Mr. Fields for the damages suffered as a result of the unreasonably dangerous condition of the subject products.

**Two:** Negligence as to all defendants

56. Plaintiff incorporates all prior paragraphs.

57. At all times, Defendants had a duty to end-purchasers like Mr. Fields to deliver products for consumption that were free from defects or, alternatively, with warnings adequately informing the end-purchaser about the risks inherent in the use of the product.

58. For the same reasons set forth above, and incorporated here, Defendants breached this duty and were grossly negligent.

59. Defendants' negligence directly and proximately caused Mr. Fields' injuries.

## Causation / damages

60. Plaintiff incorporates all prior paragraphs.

61. As a direct and proximate result of the defendants' wrongful conduct as set forth above, plaintiff suffered significant and permanent injury and harm. Plaintiff respectfully seeks money damages consistent with Florida law for the harms caused him by defendants including, but not limited to, the following:

   a. Past and future costs of medical care;

   b. Past and future economic losses;

   c. Past and future emotional distress; and

   d. Past and future pain and suffering.

62. Should discovery reveal that defendants' wrongful conduct as set forth above was undertaken knowingly, recklessly, grossly, or with willful disregard for the safety and well-being of Mr. Fields and the public, plaintiff may move the court to permit a claim for punitive damages.

63. Plaintiff also requests such other and further relief as the court deems equitable, just, and proper.

**Jury demand**

64. Plaintiff requests a jury trial on all issues permitted by law.

Respectfully,

**HAIRE LAW, LLC**

By: *s/ Michael G. Haire, Jr.*
Michael G. Haire, Jr.
1168 E. Tennessee Street
Tallahassee, Florida 32308
T: 850.888.2888
mike@hairelawfl.com

**RICHARDSON, THOMAS, HALTIWANGER, MOORE & LEWIS**

Chris Moore (to apply for *pro hac vice*)
383 West Cheves Street
Florence, SC 29501
T: 803.281.8147
chris@richardsonthomas.com

Dated: July 25, 2022

Attorneys for plaintiff